## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN

| | |
|---|---|
| Alejandro Vivar, individually and on behalf of all others similarly situated, | 1:22-cv-00347 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Apple Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Apple Inc. ("Defendant") manufactures, labels, markets, and sells wireless earbud headphones identified as Powerbeats Pro under its Beats brand ("Product").



2.      The Product is promoted as "powered by the Apple H1 headphone chip," which promises to "revolutionize the way you work out."



3.      The Product claims "powerful, balanced audio" with "Dual Audio Controls."



4.      Battery life is one of the most important features of wireless earbuds, which is why

the Product is promoted as containing "Auto On/Off sensors [to] detect when earbuds are idle and

automatically enter sleep mode," so consumers "can spend less time worrying about charging and

2

more time charging forward."

5.      The Product claims that each earbud "[has up to] 9 hours of listening time" and "24 hours with charging case," and "5-minute Fast Fuel charging gives 1.5 hours of playback when the battery is low."



6.      Unfortunately, a significant percentage of users experience battery draining and charging issues with the Product which limits its functionality and usage.

7.      This is because one of the earbuds will not consistently charge or will quickly dissipate its charge, rendering the Product unfit for use.

8.      A likely cause of these issues is the placement of the earbuds within the case.



9.    When the earbuds are put in the case, the charge contact is easily disconnected by slight movement, either in transport or from not being kept on a flat surface, resulting in an earbud becoming dislodged.

10.    A possible cause is due to the ear 'gasket' on the end of the piece that inserts into the ear, preventing the earbuds from securely being situated in the case.

11.    If the tube on the gasket was sturdier and less likely to be jostled from its placement, the issue would be less likely to, or not, occur.

12.    Solutions devised by customers include inserting a wedge of material to ensure the earbuds do not move and maintain their charge equally.

13.    A significant percent of users will place the earbuds in the case and though it may appear they will begin charging, further adjusting is needed until the charge begins.

14.    The ear hooks are easily tangled within the case, causing the earbuds to not fully connect to the pins.

15.    If the earbuds are not seated in the exact position, the pins are not long enough to contact the charging circuit.

16.    If the pins were longer, the user would not have to pay as close attention to seating the earbuds in the case.

17.    The case design contributes to the charging issues, because the well lacks the depth to enable the earbuds to be placed easily.

18.    The magnetic force within the case is not adequate to secure the earbuds in their seat.

19.    Circuit design has been hypothesized as a cause of the unequal battery charging and drainage.

20.    Problems splitting the current can cause one of the circuits to receive all the power and shutting off power to the other circuit.

21.    The result is that one earbud sends a current the wrong way through an empty closed circuit.

22.    Though the Product claims to be "built for performance with a reinforced design for IPX4-rated sweat and water resistance," a significant percentage of users report the opposite.

23.    Perspiration causes the charging contacts on the earbuds and in the case to corrode, which contributes to a failure to charge.

24.    These effects may be mitigated by wiping the Product with alcohol after each use.

25.    In the event a customer contacts Defendant about this issue, it will attribute this to corrosion due to liquid ingress, which would be sweat.

26.    Defendant will then rely on its terms and conditions which purport to void any warranties based on liquid ingress, and the only option will be to pay for a costly repair.

27.    The Product contains and makes other representations which are misleading.

28.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

29.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

32.    The Product is sold for a price premium compared to other similar products, for no less than $150.00, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

33.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

35.    Plaintiff Alejandro Vivar is a citizen of New York.

36.    Defendant Apple Inc., is a California corporation with a principal place of business in Cupertino, Santa Clara County, California

37.    Defendant transacts business within this District through sale of the Product to residents via its retail stores, website, and third-party partners, such as Best Buy and cellular phone providers.

38.    Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

39.    Venue is in Manhattan in this District because a substantial part of the events or omissions giving rise to the claim occurred in Bronx County, i.e., Plaintiff's purchase and use of the Product and his awareness and/or experiences of and with the issues described here.

<u>Parties</u>

40.    Plaintiff Alejandro Vivar is a citizen of Bronx, Bronx County, New York.

41.    Defendant Apple Inc. is a California corporation with a principal place of business in Cupertino, California, Santa Clara County.

42.    Apple Inc. is an American multinational technology company that specializes in consumer electronics, computer software and online services.

43.    Apple products, including the Product, are sold to consumers in this District from its numerous brick-and-mortar stores, its website, and third-party partners such as Best Buy, cellular phone providers.

44.    Apple is the world's most valuable company and one of the leading global technology companies.

45.    Apple's customer loyalty rate exceeds 90%, due to several factors.

46.    First, consumers trust Apple more than other large technology companies with the privacy of their personal data, and experts say "that respect [for consumers' privacy] can translate to a sense of caring."

47.    Second, Apple ranks highest among large companies in customer satisfaction, at 82 out of 100, according to data compiled by the American Customer Satisfaction Index ("ACSI").

48.    Third, though Apple products are priced higher than competitors, customers know

that its products are of superior quality and design, and they will operate smoothly.

49.     This causes consumers to be more willing to spend extra money purchasing Apple products.

50.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Best Buy, 610 Exterior St Bronx NY 10451-2044 between January 2021 and July 2021, among other times.

51.     Plaintiff believed the Product had the battery life promised, and would maintain its charge equally and consistently.

52.     Plaintiff understood the representations to mean the Product's battery would last for the time promised, that both earbuds would charge and maintain their charges equally, not be affected by perspiration, and that the charge capability would not be negatively impacted by design or manufacture of the Product.

53.     Plaintiff bought the Product because he expected it had the battery life promised, and would maintain its charge equally and consistently because that is what the representations said and implied.

54.     Plaintiff relied on the words and images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

55.     Plaintiff is one of the many consumers who are loyal to Apple products for the reasons listed above including their high quality design which lets them work seamlessly.

56.     Plaintiff trusted the Apple brand because it was backed by Defendant's reputation for putting its customers first.

57.     Plaintiff was disappointed because he believed the Product had the battery life

promised, and would maintain its charge equally and consistently even though it did not.

58.    Plaintiff bought the Product at or exceeding the above-referenced price.

59.    Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

60.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

61.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

62.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

63.    Plaintiff is unable to rely on the labeling and representations about the issues described here for not only this Product, but other similar products, because he is unsure of whether those representations are truthful.

<u>Class Allegations</u>

64.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and a

> **Consumer Fraud Multi-State Class**: All persons in the States of Michigan, Montana, Rhode Island, Georgia, North Dakota, Virginia, South Dakota, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

65.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

66.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

67.   Plaintiff is adequate representative because his interests do not conflict with other members.

68.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

69.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

70.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

71.   Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

72.   Plaintiff incorporates by reference all preceding paragraphs.

73.   Plaintiff and class members desired to purchase a product that had the battery life promised, and would maintain its charge equally and consistently.

74.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

75.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

76.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

77.   Defendant misrepresented the Product through statements, omissions, ambiguities,

half-truths and/or actions.

78.   Plaintiff relied on the representations that the Product had the battery life promised, and would maintain its charge equally and consistently.

79.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

80.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

81.   Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

82.   As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

83.   In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

84.

Breach of Contract

85.   Plaintiff entered into a contract with Defendant for purchase of the Product

86.   The terms of the contract provided that the Product had the battery life promised, and would maintain its charge equally and consistently.

87.   Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

88.   Plaintiff was damaged by the breach, and those damages include the purchase price.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

89.   The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it had the battery life promised, and would maintain its charge equally and consistently.

90.   Defendant directly marketed the Product to consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

91.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

92.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product had the battery life promised, and would maintain its charge equally and consistently.

93.   Defendant's representations affirmed and promised that the Product had the battery life promised, and would maintain its charge equally and consistently.

94.   Defendant described the Product as one which had the battery life promised, and would maintain its charge equally and consistently, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

95.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

96.   This duty is based on Defendant's outsized role in the market for this type of Product,

12

a trusted company, known for its high levels of customer loyalty, committed to the highest quality products which function smoothly.

97.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

98.    Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

99.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

100.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

101.   The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

102.   The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it had the battery life promised, and would maintain its charge equally and consistently, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

103.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

104.   Defendant had a duty to truthfully represent the Product, which it breached.

105.   This duty was non-delegable, and based on Defendant's position, holding itself out

as having special knowledge and experience in this area, a trusted company, known for its high levels of customer loyalty, committed to the highest quality products which function smoothly.

106.  Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting its customers first.

107.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

108.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

109.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

110.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

111.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had the battery life promised, and would maintain its charge equally and consistently.

112.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

113.  Defendant knew of the issues described here yet did not address them.

114.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

115.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 13, 2022

                                        Respectfully submitted,

                                        Sheehan & Associates, P.C.
                                        /s/Spencer Sheehan
                                        60 Cuttermill Rd Ste 409
                                        Great Neck NY 11021
                                        Tel: (516) 268-7080
                                        spencer@spencersheehan.com